Argued June 7; reversed June 27; rehearing denied
September 6, 1939

# BLACKWELL *v.* McDONALD

(91 P. (2d) 836)

In Banc.

*C. C. Hall* and *Robert A. Leedy*, both of Portland, for appellant.

*Barnett H. Goldstein*, of Portland, for respondent.

RAND, C. J. This is a suit to compel the defendant to account to the plaintiff for 50 shares of Chrysler Motor Car Company common stock alleged to have been purchased by the defendant as trustee for the plaintiff. The cause was tried in the circuit court and, from a decree dismissing the suit, the plaintiff appealed.

The transaction complained of is as follows: On June 24, 1933, in consideration of $400, on that day delivered by the plaintiff to the defendant, they entered into a contract in writing which, omitting the execution clause and the signatures of the parties, is as follows:

"Whereas, the undersigned W. R. McDonald, party of the first part, and J. H. Blackwell, party of the second part, have contributed the sum of Four Hundred Dollars ($400.00) each, for the purchase of One Hundred (100) shares of Chrysler Motor Car Company common stock at $35.50 per share, or other prices agreed upon by both parties.

It is understood and agreed that the purchase of said stock is to be made in the name of the said party of the first part, and the undersigned first party hereby agrees that he holds Fifty (50) shares of said stock in trust for the benefit of the second party. It is understood and agreed that both parties have approved the purchase of said stock, and it is understood and agreed that both parties shall approve the sale of said stock.

It is further understood and agreed that the first and second parties shall share equally in the profits or

losses on the said One Hundred (100) shares of Chrysler Motor Car Company stock.''

Shortly thereafter and on July 24, 1933, the market price of said shares having declined, in order to protect the margin on which the shares had been purchased, the plaintiff advanced to the defendant the further sum of $100 and took defendant's receipt, the same being plaintiff's exhibit 4 which reads as follows:

''Received of J. H. Blackwell, the sum of one hundred and no/100 Dollars ($100.00) to apply on margin account, on fifty (50) shares of Chrysler stock. (Signed) W. R. McDonald.''

Later and on September 6, 1935, as shown by defendant's exhibit B, the defendant rendered to the plaintiff the following account:

```
"May 1933—50 Shares of Chrys-
 ler at 35½ per share
 Paid $1775.00
 Commission & Tax,
 buying & Selling 51.50
 ½ of 4% Interest on
 $2500 since May
 1933 112.50
Sept. 1935—Sold 50 Shares
 Chrysler at 67⅛—
 Total sale $3356.25
 Dividend accumu-
 lated 125.00
 ───────── ─────────
 $1939.00 $3481.25
 Total cost 1939.00
 ─────────
 Total gain $1542.25
 Margin advanced 500.00
 ─────────
 $2042.25.''
```

Notwithstanding the express provisions contained in the contract entered into by the parties at the time the first moneys were paid to the defendant by the plaintiff and in contradiction of the express provisions of the two writings last referred to, the defendant seeks to avoid an accounting for the profits received by him by claiming that it was the intention of the parties to enter into a wagering contract similar to a ''bucket shop'' transaction where no actual delivery of the stock was to be made and that, because thereof, the transaction was illegal and unenforceable. In support thereof, he testified to that effect upon the trial.

■ This oral testimony, since it tended to vary and contradict the terms of a written contract by parol, was clearly inadmissible. There were no grounds alleged in the answer upon which such oral testimony could become admissible. On the other hand, the testimony offered on behalf of the plaintiff, both by the writings themselves and independently of such writings, clearly established that the transaction was a legitimate one and had been entered into by the plaintiff in entire good faith in reliance upon defendant's honesty.

■ It seems to be the contention of the defendant that the purchase on a margin of shares of stock through a broker is a wagering contract and one which cannot be enforced at law, and this seems to be the ground upon which the trial court dismissed the suit. There is no statute in this state prohibiting the purchase of shares of stock on a margin or rendering such purchase illegal, and, hence, in the absence of such a statute, the common-law rule prevails in this state. The rule

at common law is stated in the Restatement of the Law of Contracts, sections 522 and 523, as follows:

"An agreement is not one for wagering because of the fact that it

(a) provides for the purchase or sale of securities, or other commodities on a margin, the remainder of the necessary capital being advanced by a broker or other person".

"(1) A bargain purporting to be for purchase and sale is a wager if it is part of the bargain that no actual delivery of the subject matter shall be made, and that settlement between the parties shall be made on the basis of differences in market prices. But an undisclosed intention of one or both parties to a bargain does not invalidate it.

(2) A bargain for purchase and sale, originally legal, is not made illegal by a subsequent agreement between the parties to discharge their rights and duties by a payment based on the difference between the market price at the time of the original bargain and that at the time of the subsequent agreement."

To the same effect see 6 Williston on Contracts, Rev. Ed., section 1670, where it is said:

"The test adopted in the absence of statute distinguishes between agreements to buy and sell in which an actual delivery of the property is contemplated and similar bargains in which it is contemplated merely that a settlement shall be made between the parties based on fluctuations in the market price. A bargain of the former kind is legal; one of the latter kind involves wagering and is illegal. The importance of observing that objection to recovery is not so much the character of the bargain as the guilt of the plaintiff is illustrated in wagering bargains of this sort; for, if either of the parties contracts in good faith, intending that the goods shall be actually delivered, he is entitled to the benefit of his contract, no matter what may have been the secret purpose or intention of the

other party, while the party guilty of an intent to gamble cannot recover. * * *''

■ According to the evidence, from time to time and long after it was overdue, the defendant paid to the plaintiff various small sums of money aggregating the sum of $495, and the defendant contends that the payment of these moneys constitutes an accord and satisfaction and that they were paid in full settlement and satisfaction of plaintiff's claim. There is no evidence showing or tending to show that any contract of accord was ever entered into between the parties. Had such a contract been entered into, the claim having been liquidated by defendant's statement of the account rendered to the plaintiff on September 6, 1935, an agreement by the plaintiff to accept a part only of the amount due in satisfaction of the whole would be invalid because not supported by a sufficient consideration. See *Portland Mortgage Company v. Horenstein*, decided June 20, 1939, 91 P. (2d) 533.

For the reasons stated, this cause is remanded to the court below with directions to reinstate the suit and to enter a decree and judgment in favor of the plaintiff and against the defendant for the sum of $1,547.25 with interest thereon at the rate of 6 per cent per annum from and after September 6, 1935, and it is so ordered.